Good morning, Your Honors. David Zuckman on behalf of Mr. Pitts. I know it's tough when district courts get habeas petitions. It's tough for counsel reviewing them. But you got to say that in this case, the district court flubbed the first petition. First petition is filed. It's got three exhaustive claims, one unexhausted claim. Summarily dismissed. No notice. No nothing. Just a letter in the mail saying your case is dismissed. Mr. Pitts then files a motion to reconsider. That motion is rejected because of the failure of a proof of service. Mr. Pitts doesn't know about this because, of course, he spirited away to another state to testify in a case. And then his travel is interrupted by the September 11th attacks. So he gets back and he realizes nothing's happened on his case. So he files a subsequent motion to reconsider, another Rule 60B. And the district court on November 30th says, well, you know, I'm rejecting this. You're invited to file a new petition. Do what you want, but this case is closed. And Mr. Pitts does so, and he does so 18 days late. If Mr. Pitts does not qualify for equitable tolling, I'm not sure who would. Consider his circumstance. He's in ADX Florence. There are no state law materials in ADX Florence. This is conceded by all sides. At the time Mr. Pitts is filing his petitions, they're changing their provider of state law materials from the Attorney General, which was clearly destined to fail, to the Kansas Defender Project, to the University of Wisconsin. What are the merits of his underlying claim? Well, he's got a couple of good ones. I mean, his underlying claim, his best one is his claim for self-representation. Why does he need state materials for that? Well, I mean, he just doesn't have the form. I mean, you have to file a, it is a form in California that you file. It's not just, you don't just write a letter or something. You need a piece of paper, like a 1040 form or something like that. Exactly. Okay, well, that's not going to be in the book. You need to get that from somewhere else, don't you? Well, no, actually the state prisons generally have the forms you need to file, just like in, when you're in federal custody, you can go to the MCC and say, I want a 2255 form, and they give it to you. Okay, but I understand your problem to be not the forms, it's the books. Well, yeah, he wants to also know the relevant law, but he does, I mean, it's the form that he largely seeks. In fact, that's what he writes his counsel for. But I didn't understand your petition to say that the deficiency was a lack of the paper form. Well, I said state law materials. I guess maybe I thought that was a library problem that he didn't get law books. Well, yeah, I mean, I guess I understood his statement being law books to be inclusive of law materials being inclusive of forms. Pens, pencils, everything. Well, I think he had a pencil. I'm pretty sure he did, given the... I'm just trying to, I'm not trying to fight with you, I just, I understood the problem to be that the federal prison didn't have state law books, not that they didn't have a California-approved form. I think they were dual problems. I think that they had neither of those things. The ADX Florence does not carry state law materials, is what the affidavit from Ms. Montoya says, and that they refer them out. And it is true that, I mean, he does talk in terms of, you know, it's not, Mr. Pence does not say, I lacked a, you know, this particular case, which precluded me from filing my petition. I lacked this particular form. What he said was, I asked for, you know, state law materials, told I didn't, there weren't any, and I had to go around and go back to my counsel to get them. And that seems to be self-evidently clear, since once he gets the form from his former counsel, John Steinberg, he files his petition as, it's like a 60-page handwritten petition 18 days later. And that's accounting for the fact that the letter had to spend some time in the mail. It wasn't instant messaging. I mean, it was going from ADX Florence to California, back to ADX Florence. So this guy is, I mean, if you just look at what he did, he's acted with alacrity. I mean, there's no reason to believe that he was just sitting on his hands trying to create an interesting equitable tolling problem for Your Honors to resolve. Kennedy. If we agreed with you that the first habeas petition was improperly dismissed, how important to you is the state materials problem? Zassovich. It does. You don't have to reach it. If you follow Judge Silverman's opinion in Jefferson v. Budge and say you know. Roberts. It's a landmark, I think. Zassovich. I believe so. Roberts. Right up there with the Dred Scott case. Zassovich. It's one of my favorites. Kennedy. I suppose you still have the problem whether there'd still be any problem. I guess not for your second habeas, would you? Zassovich. Yeah. And it's not even, the great thing about this case, well, I don't know if it's a great thing, but the thing about this case is that his best claim, the self-representation claim, that was exhausted. You know, he makes that claim in the district court, I'm sorry, in the state court. It's the only, the IAC on appeal is the unexhausted claim from the first petition. That's why the district court judge dismisses him out, is because he never exhausted the failure of appellate counsel to obtain certain breaking material, which, you know, those are fairly difficult claims to make. Kennedy. Describe the circumstances around the detainer. Now, Pitts is in Florence for a federal brief, doing a 49-year term, and he's, the conviction he's attacking is the state court, which is on top of, was there in fact a detainer? Zassovich. Yeah. Okay. Yeah. He has, I mean, he has a double life sentence in California, which is the subject of this particular habeas. He's got 49 uninterrupted years in ADX Florence to serve before he ever hits the California prison. And he named the attorney general as the, I'm talking about the custodian issue, of course. He names the attorney general. Right. It's never been alleged that it was improperly filed. The only problem he has had procedurally was when he filed his Rule 60B, he didn't include a proof of service, and they, the district court rejected his Rule 60B. So procedurally, Mr. Pitts has made the proper claims. And the, I mean, he had a little sequence of criminal law problems, which resulted, the California case, they actually just took off and went to the East Coast and found themselves in the great state of Virginia, where they were eventually convicted of a crack case, as well as shooting at police, which is why he finds himself in ADX Florence for the 49 uninterrupted years. A little sequence of criminal mishaps. Yeah. Well, you know, and had Mr. Pitts been allowed to represent himself at trial, I'm sure things would have turned out differently. And, I mean, the thing about the trial is that's actually a legitimate claim. I mean, what happens is, at trial, Mr. Pitts looks at his attorney and says, this guy's not representing me. I want to go pro se. And the district court judge says, yeah, the district court judge or state court judge says to him, well, wouldn't you want a couple of weeks to prepare? And Mr. Pitts says, of course I'd want a couple of weeks to prepare. He says, aha, I'm not giving you a continuance. You've got to stick with that guy. And Mr. Pitts then says, okay, fine. I don't need any time to prepare. I'm ready to go right now. Aha, I already asked you. You said you wanted a couple of weeks. I'm denying that claim. And you can't do that. You've got to let the guy go pro se. And that, that's structural error. So you said that he had no procedural problems, but in the first dismissal, the judge added, after saying there's an unexhausted claim, he said, and he didn't name the proper Respondent. But he did name the Attorney General, the State Attorney General. As I read the record, I'm not sure. Right. I don't. I mean, I've researched this Court's case law on that point, and I've never seen someone kicked out on the failure to name a proper Respondent. We always just substitute, interlineate the name. We don't say, oh, we don't know who you're attacking. Well, his petition was against the Attorney, State Attorney General. Right. And if you're a pro se litigant with a, you know, sixth-grade education, you might think that the prosecutor is the person that you're supposed to, you know, attack, even though that's obviously incorrect. But we always just substitute that out. Who would have been the proper Respondent if he's in a Federal prison and he's attacking his State case? The Warden is always the proper Respondent. The Warden of what? Of the State, of the prison that he's in. I mean, that's how I've seen it. Oh, he's in a Federal prison. A Federal prison. Oh, yeah. I mean, I guess at that point, his proper Respondent would be the State of California. Well, the red brief here has a footnote in it saying, you know, we're the proper party responding, the Attorney General, because there's a detainer and it's a State detainer and, of course, he's not in a State prison. Right. I mean, it's thorny, but I think this is all the more reason to find that equitable tolling applies. I mean, the fact that Mr. Pitts finds himself in such difficult circumstances is not a reason to say, well, you didn't dot the i's and cross the t's. With that, I'd like to reserve my remaining time. Thank you, Your Honors. Thank you, Mr. Zitton. May it please the Court, Ryan Smith for Respondent Epelee. Petitioner filed an instant petition in this case on August 6, 2003, over 20 months after the statute of limitations expired, and he's now seeking equitable tolling. To first address the issue, the panel appears to have an issue with the first dismissed petition in Federal court, and Jefferson Budge, being the landmark case that it is, also requires that the Petitioner proceed with ordinary diligence, just because he wasn't given necessarily the Rose v. Lundy advisements. He still had to act diligently to pursue his claims. In this case, after the Court dismissed the petition, the Petitioner waited another hundred and, I believe it was 91 days before he filed his first State petition to exhaust the State court remedies in the State court. But he's well within his time. I mean, he's doing it on his own time. Pardon me? I mean, he's still within the time limits by that point. He is at no, he's past the statute of limitations that already expired. No, I mean when he's, when after the case is dismissed it properly, he still has legitimate time. Yes. He still has over four months to file this State petition or file a new Federal petition. He's within his rights to take every day of that if he wants to. That is true. That is correct. So he only blew it by 18 days when he finally comes back. Well, that's not necessarily true. He filed the State petition 18 days after, excuse me, the State, the statute of limitations expired. However, that wouldn't necessarily make this current petition timely at that point in time. Petitioner waited four months, the time, between the time he filed his, the trial court denied his first State habeas petition, and he filed his second petition in the Court of Appeal. There's a recent case, a circuit court case, Culver, that said that 89 days, excuse me, 97 days and 71 days between the denial did not allow for, was an unreasonable delay between filings. So just because Petitioner would have gotten those additional days does not mean that his, this current petition would be timely at this time. Petitioner also is requesting for 21 days when he was traveling to testify as a defense witness in another matter. However, Petitioner has the burden to prove that equitable tolling is necessary or is permitted in this case. There's no indication in the record whether Petitioner created this extraordinary circumstance himself by volunteering to be a defense witness, although he was ordered to appear in the court, that was required because he was in custody in the Federal Prison in Colorado. So respondent's myth is that this might have been actually a situation where Petitioner created this dilemma himself. Secondly, this case, the 21 days, is similar to a situation where Petitioner is kept from law materials in a prison lockdown type situation or a transfer from prison to prison. It's a limited time, 21 days, and courts have routinely held that travel between prisons and lockdowns is not an extraordinary circumstance. Furthermore, Petitioner, and during this 21 days, Petitioner still had 11 months of the time frame, over 11 months to file the petition, and over four months after he returned from this to file the petition. The access to the state law materials, he requested, his main argument was access to state law materials. The prison in Florence provided prisoners with a means to obtain those materials through, prior to December 2001, through the Attorney General's Office of that state or the University of Kansas Defender Project. From December 2001 on, it was through the University of Wisconsin Legal Assistance Program. Petitioner provides no information or no documentation that he made a request for state materials from the prison until 2003, when he actually provides a letter that was written to the prison officials requesting his documentation on his alleged request back in 2001, and at that point in time, the prison tells him that if he needs state materials, he needs to contact the University of Wisconsin Legal Assistance Program. And back once again, Your Honors, to the first federal petition, there was a second claim that for the dismissal or reason for the dismissal, they claimed proper custodian was not named. Now, normally, the Attorney General is not the proper name on the petition at that point in time. It is to be either the warden that he's in-house, but of course, he's in Colorado, not in a California prison, or the director of the Department of Corrections for the state of California. So in those situations, not only was it dismissed because of the exhaustion issue, but also because of the improper respondent. And unless the Court has any other questions, the respondent has nothing else to submit on the brief. It seemed to me somewhere here in your brief that you were a proper respondent. In this situation, we are alleging that we are the proper respondent to handle the state of California's habeas petition. Yes, Your Honor. Page 1, footnote 1. Well, if that's so, why wouldn't it be all right to name you in the heading? Pardon me, Your Honor. The Attorney General refers to himself as respondent. The respondent has constructive custody over Petitioner, even though he's currently at the United States Penitentiary. Well, if the Attorney General has custody of Petitioner by reason of a detainer, why isn't it proper just to name the Attorney General as the defendant in the habeas petition? There is case law that states that just naming the Attorney General is improper. However, in this situation, we have taken custody or we have determined that we were the proper party to be named in the case. So it would seem to reason that that wasn't a proper reason to dismiss maybe the first petition. But regardless of that situation, Petitioner failed to exercise due diligence. I see. Thank you. Thank you. I just have a couple of points. Even if you buy this whole, he named the wrong party, you still have to concede that the district court was supposed to give him notice and an opportunity to be heard before sui sponte dismissing the petition. I mean, it is the rule. Dave v. McDonough says it is the rule. You've got to give notice and an opportunity to be heard. And there's no argument that that occurred in this case. Secondly, I think that this court does need to publish at least, I mean, if you get past the wrongful dismissal of his first petition, Pace has overruled this court's case law saying that the standard is impossible to file for equitable tolling. It is just an extraordinary circumstance, which, of course, is extraordinary. But that has overruled this court's case law to the contrary. I mean, it seems to me that under Miller v. Gammey, when the Supreme Court has issued a case that says this, you're supposed to follow it. What does the question mean? Did some extraordinary circumstance stand in his way? Well, as the Supreme Court so often does in its artful ways, it says these things without giving us a whole lot of content as to what that means. I mean, what constitutes an extraordinary circumstance, they don't say. It's clearly a case-by-case decision. However, I think that when you have a prisoner who's got a wrongful dismissal and whose travel is interrupted on September the 11th and is in a Federal prison without State law materials, I think we can conclude that that's extraordinary. Thanks, Your Honors. Roberts. Thank you, Mr. Smith. Thank you, Mr. Zugman. And, Mr. Zugman, we know you took the case on a pro bono basis. We appreciate your having done that and your conscientious attention to it. The case to start is submitted.
judges: Canby, Silverman , Leighton